PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

CHARLES G. WILLENBRING,

      *Petitioner-Appellant,*

v.

UNITED STATES OF AMERICA,

      *Respondent-Appellee.*

No. 07-6152

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Malcolm J. Howard, Senior District Judge.
(5:04-hc-00026-H)

Argued: December 5, 2008

Decided: March 9, 2009

Before MICHAEL, MOTZ, and KING, Circuit Judges.

Affirmed by published opinion. Judge King wrote the opinion, in which Judge Michael and Judge Motz joined.

## COUNSEL

**ARGUED:** John Cowles Neiman, Jr., BRADLEY, ARANT, ROSE & WHITE, L.L.P., Birmingham, Alabama, for Appellant. Patrick Brian Grant, U. S. ARMY, United States Army Litigation Center, Arlington, Virginia, for Appellee. **ON BRIEF:** George E. B. Holding, United States Attorney, Anne

M. Hayes, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

---

**OPINION**

KING, Circuit Judge:

Charles G. Willenbring appeals from the district court's dismissal of his habeas corpus petition with respect to a court-martial judgment entered by a military trial court. Willenbring was court-martialed in the late 1990s, while serving in the Army's reserve component, for three rape offenses committed in the late 1980s, when he was serving in the Army's regular component.[1] In pursuing habeas corpus relief under 28 U.S.C. § 2241, Willenbring contends that he was not subject to court-martial prosecution because (1) he had experienced a complete termination of military service by his honorable discharge from the Army's regular component, and only later entered its reserve component; and (2) the Uniform Code of Military Justice (the "UCMJ")[2] did not otherwise provide court-martial jurisdiction. As explained below, we conclude that Willenbring was subject to court-martial jurisdiction and prosecution, and therefore affirm the district court.

I.

In order to properly assess and resolve this appeal, it is essential to understand the complexity of these proceedings: specifically (1) the background of Willenbring's service in the

---

[1]The Army has two components: the regular component, consisting of permanent personnel, *see* 10 U.S.C. § 505, and the reserve component, consisting of personnel available for duty when national security warrants, *see id.* § 10102.

[2]The UCMJ constitutes the military's criminal code and is codified at 10 U.S.C. §§ 801-946.

Army's regular and reserve components; and (2) the underlying rulings made by the military and federal courts. We review these aspects of the proceedings in turn.

A.

On January 13, 1982, Willenbring enlisted in the Army's regular component for a period of four years. He twice extended that enlistment and reenlisted for a six-year period on September 30, 1988. During the latter reenlistment, Willenbring received an attractive private-sector job offer and thrice requested an early separation from the Army's regular component. More specifically, he sought to be discharged from such service in early 1992, thirty months before his reenlistment was to be completed. When his first request — made on January 17, 1992 — was denied, Willenbring promptly filed an updated request for an early separation, altering his initial submission and agreeing to serve "the remaining portion of his enlistment contract" in the Army's reserve component, if it "would grant his release from the regular Army in order to take a civilian job." J.A. 12.[3] Willenbring's second request was also denied, however, because he had failed to secure the proper recommendation. On March 9, 1992, Willenbring submitted his third request for an early separation, which was identical to the second request except that it was supported by his commanding officer's recommendation. The Army approved his early separation request on March 10, 1992, and Willenbring's discharge from the regular component was fixed for March 31, 1992. Three days after such approval, on March 13, 1992, Willenbring signed a one-year enlistment contract with the Army's reserve component, with his reserve duty to begin on April 1, 1992.

Pursuant to the foregoing, Willenbring was honorably discharged from the Army's regular component on March 31,

---

[3]Citations herein to "J.A. ___" refer to the contents of the Joint Appendix filed by the parties in this appeal.

1992. His enlistment in the Army's reserve component took effect the next day, and he served as a reservist until 1997, by virtue of three enlistments — his 1992 one-year enlistment, a subsequent one-year reenlistment, and, finally, a three-year reenlistment that began on February 26, 1994. In February 1997, near the end of his final reenlistment as a reservist, Willenbring was ordered to active duty to face court-martial proceedings for the rape offenses that had occurred in 1987 and 1988, during his service in the Army's regular component.[4] The court-martial specifications[5] were preferred on February 26, 1997, alleging three violations of Article 120 of the UCMJ, codified at 10 U.S.C. § 920 — a single rape offense in September 1987 near Champagne, Illinois, plus two rape offenses in November 1988 at Fort Belvoir, Virginia.[6]

## B.

The UCMJ spells out the statutory processes by which a military trial court may exercise court-martial jurisdiction

---

[4]There are three types of courts-martial at the military trial court level: summary, special, and general. A summary court-martial adjudicates minor offenses only, while a special court-martial has jurisdiction over more serious offenses but cannot impose punishment of more than six months' confinement. In contrast, a general court-martial — the type at issue in this appeal — is entitled to adjudicate all offenses identified under the UCMJ, and may impose any lawful sentence. *See Weiss v. United States*, 510 U.S. 163, 167 (1994).

[5]A specification is, under military law, similar to an indictment, and is a "plain, concise, and definite statement of the essential facts constituting the offense charged." *United States v. Thompson*, 59 M.J. 432, 441 (C.A.A.F. 2004) (internal quotation marks omitted).

[6]In the late 1990s, Willenbring was indicted in North Carolina for six unrelated crimes — four rapes and two kidnappings — and the Army did not seek to exercise jurisdiction over those offenses. North Carolina placed Willenbring in pretrial confinement for those offenses on November 1, 1996, and later released him to the Army after the court-martial specifications were preferred. On January 8, 1999, Willenbring was convicted of the North Carolina charges and sentenced to life imprisonment, a sentence he is currently serving.

over a member of the reserve component, specified primarily in Article 2 of the UCMJ, and supplemented by Article 3. Article 2, codified at 10 U.S.C. § 802, spells out the general circumstances under which a member of the reserve component may be called to active duty to face court-martial proceedings.[7] Of relevance here, Article 2(a)(1) identifies those persons subject to court-martial jurisdiction, that is, "[m]embers of a regular component of the armed forces . . . and other persons lawfully called or ordered into, or to duty in or for training in, the armed forces." Additionally, Article 2(d)(1)(B) specifies that a reservist "who is not on active duty and who is made the subject of proceedings" under the UCMJ "may be ordered to active duty involuntarily for the purpose of . . . trial by court-martial." Pursuant to Article 2(d)(2)(A) and (B), however, a military trial court possesses court-martial jurisdiction over an Army reservist only when the alleged offense was committed while the servicemember was "on active duty" or "on inactive-duty training."[8]

In 1997, Willenbring moved to dismiss the specifications lodged in the court-martial proceedings, asserting that the military trial court lacked jurisdiction under both Article 2 and Article 3. He contended, inter alia, that the military trial court

---

[7]Under Article 3 of the UCMJ, codified at 10 U.S.C. § 803, a military court's jurisdiction may, in limited circumstances, extend beyond the parameters of Article 2.

[8]Article 2(d)(2) of the UCMJ provides, in relevant part, that

> (2) A member of a reserve component may not be ordered to active duty under paragraph (1) except with respect to an offense committed while the member was —
>
> > (A) on active duty; or
> >
> > (B) on inactive-duty training[.]

The government does not contend that Willenbring's rape offenses were committed while he was "on inactive-duty training." Thus, as explained *infra*, we must decide whether Willenbring was "on active duty," within the meaning of Article 2(d)(2)(A), when the rape offenses were committed.

lacked such jurisdiction because he had experienced a complete termination of military service between his discharge from the Army's regular component, on March 31, 1992, and his enlistment in the Army's reserve component, effective April 1, 1992. The court declined to dismiss the specifications, however, and Willenbring sought an interlocutory review of that decision in the Army Court of Criminal Appeals (the "Army Appeals Court"). On July 23, 1997, such review was denied without opinion. The Army Appeals Court specified, however, that its denial of interlocutory review was without prejudice to Willenbring's right to pursue his contentions in the regular appellate process. Willenbring then appealed further, to the Court of Appeals for the Armed Forces.

On June 30, 1998, the Court of Appeals for the Armed Forces affirmed the Army Appeals Court's denial of interlocutory review, but remanded for findings and conclusions on the issue of Willenbring's asserted termination of service. *See Willenbring v. Neurauter*, 48 M.J. 152, 175 (C.A.A.F. 1998) ("*Willenbring I*") ("During further proceedings in this case, it will be necessary for the military judge to make findings of fact and conclusions of law specifically directed to the issue of termination of service.").[9] On remand, Willenbring pleaded guilty to the three specifications of rape, and the court-martial judgment was entered on March 5, 1999.[10]

The military trial court thereafter made the findings and conclusions mandated in 1998 by the Court of Appeals for the

---

[9]*Willenbring I* is found at J.A. 124-49.

[10]The court-martial judgment is found at J.A. 67. Willenbring was initially sentenced, on October 14, 1998, to confinement for thirty-six years. Pursuant to a pretrial agreement, however, the military trial court later reduced his sentence to twenty years. Because Willenbring was then serving a life sentence on rape and kidnapping convictions in North Carolina, *see supra* note 6, the military trial court deferred execution of its sentence "until such time as Staff Sergeant Willenbring is permanently released to the armed forces by the State of North Carolina." J.A. 67.

Armed Forces.[11] In relevant part, those findings were as follows:

> Around February or early March 1992, [Willenbring] received a civilian job offer and requested an exception to policy in the separation regulation, AR 635-200, Chapter 5-3, for a civilian job offer. That request was denied. [Willenbring] on 9 Mar 92 submitted a [Department of the Army] Form 4187 (Personnel Action) requesting reconsideration of his request for release from active duty and stated: "I am willing to serve my remaining time in service in the Active Reserves." His ETS at the time under his then current enlistment was September 1994 . . . . His battalion-level commander recommended approval of that request on 9 Mar 92, and Department of the Army Separations and Appeals Branch on 10 Mar 92 approved that request with a separation date of 10 Mar 92. On 13 Mar 92, [Willenbring] enlisted in the U.S. Army Reserve for a term of 1 year under a "Transition Enlistment." He enlisted for specific assignment to Co D, 2d Bn Tng, Spt Bde, Jones Point, USARC, Alexandria, VA, requesting reserve component assignment orders for assignment to that unit. Those orders were issued that day, 13 Mar 92, assigning him effective 1 Apr 92 to that unit. [Willenbring] in his Request for Component Assignment Orders . . . requested to continue his SGLI coverage. In his enlistment contract of 13 Mar 92, [Willenbring] acknowledged and initialed his understanding that "this enlistment will require that I commence training with a troop program unit immediately. I will be required to maintain satisfactory participation in the Ready Reserve for the entire period of service

---

[11]Although the pretrial court-martial record is somewhat sparse, it appears that Willenbring's guilty pleas were conditional, authorizing his subsequent appeals on the jurisdictional issue.

> stipulated in the enlistment document to which this
> is attached." [Willenbring's Department of Defense
> (DD) Form] 214 reflected his transfer to his reserve
> unit —D Co, 2d Bn . . . . [Willenbring] acknowl-
> edged in February 1995 . . . on a retirement points
> calculation that he had served on active duty until 31
> Mar 92 and began his reserve duties on 1 Apr 92.

*United States v. Willenbring*, 56 M.J. 671, 674-75 (A. Ct. Crim. App. 2001) ("*Willenbring II*").[12] On the basis of the foregoing factual recitation, the military trial court concluded that Willenbring "did not have a complete break in service" and that "his military service was continuous." *Id.* at 675.

On appeal from the court-martial judgment, the Army Appeals Court affirmed Willenbring's convictions and adopted the military trial court's conclusion that he had not experienced a complete termination of service between his discharge from the Army's regular component on March 31, 1992, and his enlistment in the reserve component on April 1, 1992. *See Willenbring II*, 56 M.J. at 674, 676, 683. The court-martial convictions were thereafter also affirmed by the Court of Appeals for the Armed Forces. *See United States v. Willenbring*, 57 M.J. 321 (C.A.A.F. 2002). Willenbring then sought relief in the Supreme Court of the United States, where certiorari was denied. *See Willenbring v. United States*, 537 U.S. 1112 (2003).

On January 12, 2004, after exhaustion of his military court remedies, Willenbring petitioned in the Eastern District of

---

[12]The decision we refer to as *Willenbring II*, the Army Appeals Court's adjudication of Willenbring's subsequent appeal of the military trial court's findings and conclusions, is found at J.A. 150-63. On review, the Army Appeals Court adopted all the findings made by the military trial court, *see Willenbring II*, 56 M.J. at 674-75, except the separation date of "10 Mar 92," which it deemed erroneous, *id.* at 674 & n.4. The uncontested records show Willenbring's correct separation date to be March 31, 1992.

North Carolina for habeas corpus relief, pursuant to 28 U.S.C. § 2241, raising not only challenges to the court-martial judgment on the ground that the military trial court lacked jurisdiction, but also several non-jurisdictional challenges.[13] In June 2005, after the government moved for dismissal, the court dismissed the habeas corpus petition. *See Willenbring v. United States*, No. 5:04-hc-00026-H (E.D.N.C. June 21, 2005) (the "2005 Order").[14] Willenbring then appealed to this Court, and we affirmed the 2005 Order's resolution of the non-jurisdictional issues. We remanded, however, for the district court to further consider two of Willenbring's claims: (1) that the military trial court lacked jurisdiction because Willenbring had been honorably discharged from his Army enlistment prior to the institution of the court-martial proceedings; and (2) that the court-martial was not entitled to exercise continuing jurisdiction over the specifications under Article 3(a) of the UCMJ. *See United States v. Willenbring*, 178 F. App'x 223, 225 (4th Cir. 2006) (unpublished per curiam decision). On remand, the government again moved to dismiss, contending that, as a legal proposition, the military trial court possessed jurisdiction. The district court treated the motion to dismiss as a request for summary judgment and, concluding that the military trial court possessed jurisdiction under Article 2(d), granted summary judgment to the government and denied habeas corpus relief. *See Willenbring v. United States*, No. 5:04-hc-00026-H, at 3-4 (E.D.N.C. Jan. 16, 2007) (the "2007 Order").[15] Willenbring now pursues this appeal, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

---

[13]The non-jurisdictional issues initially raised in the § 2241 habeas corpus petition included, inter alia, Willenbring's claims of ineffective assistance of counsel, improper sentence deferment, and unlawfully coerced confessions.

[14]The 2005 Order is found at J.A. 68-72.

[15]The 2007 Order is found at J.A. 177-81.

## II.

We review de novo the legal rulings made by a district court in habeas corpus proceedings, *see Billings v. Polk*, 441 F.3d 238, 243 (4th Cir. 2006), recognizing that a military court is a statutory creation, vested with special and limited jurisdiction, *see Runkle v. United States*, 122 U.S. 543, 555 (1887). As a result, a court-martial proceeding must be convened and constituted in conformity with the applicable statutes, specifically the UCMJ; otherwise the military court lacks jurisdiction. *See McClaughry v. Deming*, 186 U.S. 49, 62 (1902). The federal courts possess authority to consider and determine habeas corpus challenges to the jurisdiction of the military courts. *See* 28 U.S.C. § 2241(a) ("Writs of habeas corpus may be granted by . . . the district courts and any circuit judge within their respective jurisdictions."); *Schlesinger v. Councilman*, 420 U.S. 738, 746-47, 753 n.26 (1975) (recognizing lack of jurisdiction as proper basis for collateral attack on court-martial judgment); *McClaughry*, 186 U.S. at 68-69 (same).

## III.

In this appeal, Willenbring contends that the court-martial judgment is void for lack of jurisdiction because (1) he experienced a complete termination of military service on March 31, 1992;[16] and (2) Article 2(d) of the UCMJ does not otherwise provide court-martial jurisdiction on the specifications lodged against him.[17] We examine these contentions in turn.

---

[16]Some courts use the phrase "complete termination of military status," while others use "complete termination of military service." Finding no legal distinction between the two, we are satisfied to use the latter.

[17]Willenbring also contends that Article 3(a) does not provide for court-martial jurisdiction on the specifications lodged against him. As explained below, because the military trial court possessed jurisdiction under Article 2(d), we do not reach the Article 3(a) contention.

## A.

First, we assess Willenbring's contention that he experienced a complete termination of military service on March 31, 1992. In this respect, the parties seem to agree that a complete termination of military service from either of the Army's two components bars the subsequent exercise of Article 2(d) court-martial jurisdiction over offenses committed while on active duty in that component. On the other hand, they disagree on whether Willenbring, on March 31, 1992, experienced a complete termination of military service.[18] That dispute has been resolved by the military courts, however, and we agree with their resolution.

A "discharge," in military terms, is generally understood to be a "complete termination" of military service, but does not include a discharge conditioned upon acceptance of further military service. *See Murphy v. Dalton*, 81 F.3d 343, 348 (3d Cir. 1996); Discussion to R.C.M. 204(d), *Manual for Courts-Martial* (the "Manual").[19] This legal principle is derived from the Supreme Court's decision in *United States ex rel. Hirshberg v. Cooke*, which decided that the military was not entitled to institute court-martial proceedings against a servicemember for offenses committed during an earlier enlistment — which had expired and from which he had been

---

[18]In addressing the complete termination issue, the district court observed that

> "if there was a change in status between regular and reserve service, unaccompanied by a complete termination of military status, then the reservist would be subject to court-martial jurisdiction for all prior-service offenses to the same extent as a regular whose military status had changes in form without a complete termination of military status."

2007 Order 2 (quoting *Willenbring I*, 48 M.J. at 170).

[19]The Manual is an Executive Order promulgated by the President concerning court-martial procedures. *See United States v. Davis*, 47 M.J. 484, 486 (C.A.A.F. 1998).

honorably discharged — even though he had reenlisted the day after being discharged. *See* 336 U.S. 210, 211, 218-19 (1949); *see also United States ex rel. Toth v. Quarles*, 350 U.S. 11, 14, 22-23 (1955) (concluding that it is unconstitutional to court-martial former servicemember — after he had "severed all relationship with the military" — for offenses committed in military service). The Manual recognizes this legal proposition in the following terms:

> A member of the reserve component at the time disciplinary action is initiated, who is alleged to have committed an offense while on active duty or inactive-duty training, is subject to court-martial jurisdiction without regard to any change between active and reserve service or within different categories of reserve service subsequent to commission of the offense. *This subsection does not apply to a person whose military status was completely terminated after commission of an offense.*

R.C.M. 204(d), *Manual for Courts-Martial* (emphasis added).

In light of the foregoing, the military courts and the district court each concluded that Willenbring's March 31, 1992 discharge was conditioned on his earlier contract to enlist in the reserve component, entered into on March 13, 1992, and effective on April 1, 1992, and that he had not been completely terminated from military service. The issue of whether Willenbring experienced a complete termination of his military service on March 31, 1992, has both legal and factual aspects. *See Willenbring II*, 56 M.J. at 674 (observing that whether Willenbring experienced complete termination of service is "mixed question of law and fact"). To the extent such a conclusion — that Willenbring did not experience such a termination of military service — is a question of law, however, we assess it de novo. *See Billings v. Polk*, 441 F.3d 238, 243 (4th Cir. 2006) (recognizing de novo review of district court's legal conclusions in habeas proceedings); *Fricke v.*

*Sec'y of Navy*, 509 F.3d 1287, 1290 (10th Cir. 2007) (recognizing that federal court's "review of jurisdictional issues is independent of the military courts' consideration of such issues").[20]

The degree to which a federal court may properly assess the factual determinations made by a military court with respect to its jurisdiction is not entirely apparent. It is clear, however, that a federal court reviewing a military habeas petition is normally not at liberty to revisit a military court's evidentiary rulings or findings. *See Burns v. Wilson*, 346 U.S. 137, 142 (1953) (observing that federal court, in assessing habeas challenge to court-martial judgment, must "take account of the . . . fair determinations of the military tribunals after all military remedies have been exhausted," and is not entitled to "grant the writ simply to re-evaluate the evidence"). In its *Burns* decision, however, the Court did not explicitly distinguish between a military court's jurisdiction-related findings, and its findings concerning other issues. Indeed, the *Burns* Court indicated that its decision did not involve a jurisdictional question. *See* 346 U.S. at 138-39, 144 (observing that petitioner's contentions included alleged constitutional violations by military courts, and district court had "satisf[ied] itself that the courts-martial . . . had jurisdiction over the [petitioner] at the time of trial").[21] In any event, we need not decide whether

---

[20]Indeed, in our earlier remand, we directed the district court to consider the jurisdictional issue on the merits. *See United States v. Willenbring*, 178 F. App'x 223, 225 (4th Cir. 2006) (remanding Willenbring's claim "for further consideration" of whether military trial court "lacked jurisdiction over him because he had been honorably discharged from his enlistment prior to the institution of court-martial proceedings").

[21]We note that, pursuant to 10 U.S.C. § 876, "[o]rders publishing the proceedings of courts-martial and all action taken pursuant to those proceedings are binding upon all departments, courts, agencies, and officers of the United States." That statutory provision, however, fails to provide any controlling guidance on whether a federal habeas court should review or accept a military court's jurisdictional fact-finding. According to the Court of Appeals for the Armed Forces, § 876 "'only defines the point at

we are obliged to make our own assessment of jurisdictional fact-finding of the military courts — by de novo or clear error review, or otherwise — or simply accept such jurisdictional fact-finding. Put simply, the military courts properly decided the complete termination of service issue, and indeed, Willenbring does not dispute the essential facts relied upon by the military courts in making that determination.[22] Thus, we need not, in this proceeding, definitively resolve the issue of whether — or to what extent — a federal court is obliged to accept the jurisdictional fact-finding of the military courts. Because the military courts were correct in this situation — regardless of the standard of review that may be utilized — we will proceed to assess the legal aspects of that issue.

The legal conclusion made by the district court on this point — that Willenbring did not experience a complete termination of military service — constitutes neither a misinter-

---

which military court judgments become final and requires that they be given res judicata effect.'" *Denedo v. United States*, 66 M.J. 114, 120 (C.A.A.F. 2008) (quoting *Schlesinger v. Councilman*, 420 U.S. 738, 749 (1975)). Moreover, in *Schlesinger*, the Supreme Court specifically divorced § 876 from any issue of jurisdiction, explaining that it "does not expressly effect any change in the subject matter jurisdiction of Article III courts." 420 U.S. at 749.

[22]In determining that Willenbring experienced a complete termination of service, the military courts relied on the available evidence (not challenged by Willenbring), including his enlistment contract, which characterized his status as "transition enlistment"; his request for discharge, which was only accepted by his commanding officer after Willenbring agreed to enter the Army's reserve component following his prospective discharge from the regular component; and the date of his change in military status, which was the day following his discharge from the regular component. *Willenbring II*, 56 M.J. at 676. The Army Appeals Court further observed that "[t]here was no more a break in [Willenbring's] service or status than there is a break in time as one day or year turns to the next." *Id.* In denying § 2241 relief, the district court relied heavily on such findings and on Willenbring's explicit representations in his final separation request that, if the request were granted, he was willing to serve the remaining part of his Army enlistment in the reserve component.

pretation nor a misapplication of law. Put succinctly, this situation is readily distinguishable from the underlying decisions on which Willenbring primarily relies, *Hirshberg* and *Murphy*. In *Hirshberg*, the Navy had granted the petitioner an honorable discharge on March 26, 1946, because of the expiration of his prior enlistment, and he reenlisted on March 27, 1946, obligating himself to four additional years of service. *See* 336 U.S. at 211. Approximately a year later, the Navy charged Hirshberg with offenses allegedly committed during his prior enlistment. *Id.* The Supreme Court then concluded that a discharged servicemember, whether reenlisted or not, was not subject to court-martial jurisdiction for offenses occurring during prior military service. *Id.* at 218-19.

More recently, in *Murphy*, a Marine captain had been honorably discharged at the end of his service in the regular component of the Marine Corps and immediately transferred to its reserve component. *See* 81 F.3d at 345. Although Murphy accepted a commission as an officer in the Marines' reserve component simultaneous with his discharge from its regular component, he had been completely terminated from service in its regular component and had no further statutory or contractual commitment to the Marines. *Id.* at 345, 347-48. On these facts, the Third Circuit concluded that Murphy's discharge from the regular component was not "conditioned" on his reenlistment in the reserve component of the Marines. *See id.* at 347-49 ("[Murphy] was under *no* obligation to accept a reserve commission."). Therefore, because Murphy had experienced a complete termination of his military status, he was not subject to court-martial proceedings after his discharge from the Marines' regular component for offenses committed prior thereto. *Id.* at 349.

The jurisdictional facts found by the military courts in these proceedings, however, are readily distinct from those in both *Hirshberg* and *Murphy*. Put simply, Willenbring accepted — prior to his discharge from the Army's regular component — a contractual obligation to enter its reserve component.

Indeed, Willenbring signed his reserve component enlistment contract more than two weeks before his early separation from the regular component, and thereby agreed to enter the reserve component upon that early separation. No such arrangement was present in either *Hirshberg* or *Murphy*.

Willenbring's situation is more analogous to that of *United States v. Clardy*, where a servicemember was "discharged solely for the purpose of reenlistment" and his military service was uninterrupted. 13 M.J. 308, 309 (C.M.A. 1982). There, the Court of Military Appeals[23] concluded that, when a servicemember is discharged *before* his enlistment expires and immediately reenlists, he may be tried for predischarge offenses occurring during the prior enlistment. *See id.* at 310-16 (concluding that "where the person's discharge or other separation does not interrupt his status as a person belonging to the general category of persons subject to military law, court-martial jurisdiction does not terminate," and "the criterion is not the mere fact of discharge but the termination of military service" (internal quotation marks and citations omitted)). The *Clardy* case reinforced the long-standing military tradition that, when an enlisted servicemember is discharged in order to reenlist before the expiration of his service, military jurisdiction continues, "'when there is no hiatus'" between the two enlistments. *Id.* at 314 (quoting *Legal and Legislative Basis, Manual for Courts-Martial* 12-13 (1951)). Therefore, the conditional nature of a military discharge — as in Willenbring's case — authorizes court-martial jurisdiction to be exercised after such a discharge.[24]

---

[23]In 1994, the Court of Military Appeals was renamed as the Court of Appeals for the Armed Forces.

[24]Willenbring also asks that we entertain his contention, made in an informal brief filed with this Court after the 2007 Order had been entered, that his enlistment with the Army terminated on February 25, 1997, the day before the Army formally charged him with rape, and the Army failed to properly extend his enlistment before the termination date. This, he believes, created a complete termination of military service that eliminated the Army's ability to call him to active duty under Article 2(d). Because this issue was not included in our mandate to the district court and, therefore, not considered on remand, we decline to consider it at this late date.

## B.

Our determination that Willenbring experienced continuous military service is not sufficient to fully dispose of the issue of whether the military trial court had jurisdiction to enter the court-martial judgment. We must also assess whether the applicable provisions of the UCMJ yet apply to the specifications. In this respect, Willenbring maintains that Article 2(d) does not apply to his offenses because the phrase "on active duty" — in subpart (2)(A) thereof — refers only to those offenses committed while the servicemember was on active duty in the Army's reserve component. *See supra* note 8. Willenbring relies for this proposition on the Third Circuit's 1996 *Murphy* decision, which concluded that the phrase "on active duty" in subpart (2)(A) refers only to active duty in the reserve component. *See* 81 F.3d at 350-52. The Court of Appeals for the Armed Forces disagreed with *Murphy*'s reasoning, however, and concluded that the phrase "on active duty" refers to active duty in both the Army's regular and reserve components. *See Willenbring I*, 48 M.J. at 172-75. As explained below, we agree with the Court of Appeals for the Armed Forces.

Willenbring first asserts that the language of Article 2(d) supports his contention on appeal. He argues that, when the term "active duty" is used in Article 2(d) — other than in subpart (2)(A) — it plainly refers to active duty in the reserve component only. *See, e.g.*, Article 2(d)(1) ("A member of a reserve component who is not on *active duty* . . . ." (emphasis added)); Article 2(d)(2) ("A member of a reserve component may not be ordered to *active duty* . . . ." (emphasis added)). According to Willenbring, because the phrase "on active duty" — as found in subpart (2)(A) — is contained within Article 2(d), where "active duty" is elsewhere limited to the reserve component, it should also be restricted to reservist active duty only.

The government contends, on the other hand, that "although [subpart (2)(A)] limits jurisdiction to offenses com-

mitted while a reservist was 'on active duty,' it does not distinguish between regular or reserve status with respect to the prior period of 'active duty' service during which the offense was committed." Br. of Resp't 15. Consequently, the government asserts, Willenbring's construction of subpart (2)(A) places a limitation on court-martial jurisdiction that simply is not authorized by its plain language. As explained below, we agree with the government.

Our first step in such a statutory interpretation is "'to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.'" *United States v. Goforth*, 546 F.3d 712, 714 (4th Cir. 2008) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)). Indeed, "[w]hen the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 462 (2002) (quoting *Conn. Nat. Bank v. Germain*, 503 U.S. 249, 254 (1992)). However, recognizing that "[s]tatutory construction is a holistic endeavor," *Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 60 (2004) (internal quotation marks omitted), we must evaluate the statutory language itself, the specific context in which such statutory language is used, and the broader context of the statute as a whole, *see Palisades Collections LLC v. Shorts*, 552 F.3d 327, 330-31 (4th Cir. 2008) (citing *Robinson*, 519 U.S. at 341).

On the statutory language itself, 10 U.S.C. § 101 provides a general definition of the term "active duty" applicable to all of Title 10, including the UCMJ. Section 101 defines "active duty" as

> full-time active duty in the active military service of the United States. Such term includes full-time training duty, annual training duty, and attendance, while in the active military service, at a school designated as a service school by law or by the Secretary of the

military department concerned. Such term does not include National Guard Duty.

10 U.S.C. § 101(d)(1). This definition thus encompasses active duty in both the Army's regular component and its reserve component. The definition excludes only the National Guard from its scope, and it specifically includes the training duties in which Army reservists participate. And, because there is a statutory definition of "active duty" in § 101 applicable to the UCMJ, we are obliged to adhere to it. As we recently concluded,

> a definition which declares what a term "means" excludes any meaning that is not stated . . ., [a]nd as a necessary corollary to this principle, where Congress has used a statutorily defined term in a manner seemingly inconsistent with the term's statutory definition, an interpreting body is not entitled to adopt the seemingly inconsistent use of the term in lieu of the term's express statutory definition.

*Aremu v. Dep't of Homeland Security*, 450 F.3d 578, 581-82 (4th Cir. 2006) (internal quotation marks omitted).

Turning to the context of the phrase "on active duty," Willenbring maintains that the definition of "active duty" in § 101 does not require *every* use of the term in Title 10 to include "active duty" in both of the Army's components. In assessing the term "active duty" in the broad context of Title 10, however, Congress expressly referenced the reserve component when it meant to restrict its application. *See, e.g.*, 10 U.S.C. § 101(d)(6)(A) ("The term 'active Guard and Reserve duty' means *active duty performed by a member of a reserve component* of the Army, Navy, Air Force, or Marine Corps." (emphasis added)); 10 U.S.C. § 101(d)(4) ("The term 'active status' means the *status of a member of a reserve component* who is not in the inactive Army National Guard or inactive Air National Guard, on an inactive status list, or in the Retired

Reserve." (emphasis added)). In the specific context of Article 2 of the UCMJ, Congress expressly referenced particular military components when it sought to confine its application to such components. *See, e.g.*, Article 2(a)(1), (3), (4), (5) (indicating "regular component" or "reserve component"). Thus, when Congress has desired to limit a provision to a specific component of the military, it has consistently done so. And, Congress simply did not do so in writing and adopting subpart (2)(A) of Article 2(d).

Willenbring also contends that Article 2(d)(2)'s reference to a "member of a reserve component" bolsters the inference that subpart (2)(A) was intended to address only those offenses a servicemember committed when serving as a reservist. We also disagree with this contention. Article 2(d)(2) must be read to create court-martial jurisdiction over reservists only, in that regular component servicemembers are already on active duty and, as such, already subject to court-martial jurisdiction. *See* Article 2(a)(1). We are unable to conclude, however, that simply because Article 2(d)(2) applies to reservists, the phrase "on active duty" in subpart (2)(A) refers solely to offenses committed during reservist active duty. Subpart (2)(A) stands on its own — free from any qualifying or limiting language — and the meaning of "on active duty" must be construed and applied as such. *See Meese v. Keene*, 481 U.S. 465, 484 (1987) ("It is axiomatic that the statutory definition of a term excludes unstated meanings of that term.").

Finally, Willenbring maintains that subpart (2)(B)'s reference to "inactive-duty training" supports his position. Pursuant to Article 2(d), the government is entitled to pursue court-martial proceedings against a reservist for offenses committed while "(A) on active duty" or "(B) on inactive-duty training." Because there is no inactive-duty training in the regular component, Willenbring argues that subparts (2)(A) and (2)(B) must be limited to proceedings lodged against a reservist. Again, we disagree. The terms "active duty" and "inactive-

duty training" have distinct definitions in Title 10. While the definition of "active duty" encompasses active duty in the Army's regular component and its reserve component, *see* 10 U.S.C. § 101(d)(1), the definition of "inactive-duty training" explicitly refers to reservist duties only, *see id.* § 101(d)(7). Accordingly, if Congress had intended to limit Article 2(d) jurisdiction over reservists to offenses committed during service in the reserve component, it could have done so by qualifying the phrase "on active duty" in subpart (2)(A) with words such as "in the reserve component." Congress did not confine subpart (2)(A) to reservist active duty, however, by simply placing subparts (2)(A) and (2)(B) side-by-side. As such, Willenbring's assertion concerning the placement of these subparts of Article 2(d) must also fail.[25]

---

[25]Finally, Willenbring makes three additional contentions on the statutory issue — (1) that the legislative history compels his reading of Article 2(d); (2) that the rule of lenity mandates a ruling in his favor; and (3) that the government's reading impermissibly extends court-martial jurisdiction, encroaching on civilian constitutional rights. The first two assertions need only be addressed if Article 2(d) is somehow ambiguous. *See Stiltner v. Beretta U.S.A. Corp.*, 74 F.3d 1473, 1482 (4th Cir. 1996) (observing that "[i]f the language [of a statute] is plain and unambiguous, we look no further," but if statute is ambiguous, "we may look . . . to the legislative history for guidance"); *United States v. Gosselin World Wide Moving*, 411 F.3d 502, 514 n.4 (4th Cir. 2005) (recognizing that rule of lenity should only be invoked if there is genuine ambiguity that traditional rules of statutory construction cannot resolve). Because the applicable statutory language is unambiguous, it is unnecessary for us to reach and address those two contentions. Willenbring raises the third assertion under *Ex parte Endo*, a decision involving the rights of an American citizen of Japanese descent, who was detained by the War Relocation Authority in the early 1940s. *See* 323 U.S. 283, 300 (1944) (concluding that laws should not place restraint on citizens beyond what is "clearly and unmistakably indicated by the [law's] language"). Assuming that *Endo* applies, the applicable statutory language in this case is clear and unmistakable; we thus do not contravene *Endo* by adopting the government's position on this statutory issue.

## IV.

Pursuant to the foregoing, the judgment of the district court is affirmed.

*AFFIRMED*