**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

PROJECT VOTE / VOTING FOR
AMERICA, INCORPORATED,

    *Plaintiff-Appellee,*

   v.

ELISA LONG, in her official
capacity as General Registrar of
Norfolk, Virginia; DONALD
PALMER, in his official capacity as
Secretary, State Board of
Elections,

    *Defendants-Appellants.*

No. 11-1809

UNITED STATES OF AMERICA; THE
REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS; AMERICAN
SOCIETY OF NEWS EDITORS; THE
ASSOCIATED PRESS; ASSOCIATION OF
CAPITOL REPORTERS AND EDITORS;
ATLANTIC MEDIA INC.; CITIZEN
MEDIA LAW PROJECT; LIN MEDIA;
THE NATIONAL PRESS CLUB;
NATIONAL PRESS PHOTOGRAPHERS
ASSOCIATION; NEWSPAPER
ASSOCIATION OF AMERICA;

North Jersey Media Group, Incorporated; Radio Television Digital News Association; The Seattle Times Company; Society of Professional Journalists; Student Press Law Center; USA Today; Virginia Coalition for Open Government,

  *Amici Supporting Appellee.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Rebecca Beach Smith, District Judge.
(2:10-cv-00075-RBS-DEM)

Argued: May 17, 2012

Decided: June 15, 2012

Before WILKINSON, DIAZ, and FLOYD, Circuit Judges.

Affirmed and remanded by published opinion. Judge Wilkinson wrote the opinion, in which Judge Diaz and Judge Floyd joined.

## COUNSEL

**ARGUED:** Earle Duncan Getchell, Jr., OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellants. Ryan Morland Malone, ROPES & GRAY, LLP, Washington, D.C., for Appellee. Erin H. Flynn, UNITED STATES DEPARTMENT OF JUSTICE, Washing-

ton, D.C., for Amici Supporting Appellee. **ON BRIEF:** Kenneth T. Cuccinelli, II, Attorney General of Virginia, Charles E. James, Jr., Chief Deputy Attorney General, Wesley G. Russell, Jr., Deputy Attorney General, Stephen M. Hall, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia; Jeff W. Rosen, Lisa Ehrich, PENDER & COWARD, PC, Virginia Beach, Virginia, for Appellants. Douglas Hallward-Driemeier, Augustine M. Ripa, ROPES & GRAY, LLP, Washington, D.C., for Appellee. Thomas E. Perez, Assistant Attorney General, Diana K. Flynn, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for the United States, Amicus Supporting Appellee. Lucy A. Dalglish, Mark R. Caramanica, You-Jin J. Han, THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS, Arlington, Virginia; Kevin M. Goldberg, FLETCHER, HEALD & HILDRETH, PLC, Arlington, Virginia, for American Society of News Editors and Association of Capitol Reporters and Editors; Karen Kaiser, Associate General Counsel, THE ASSOCIATED PRESS, New York, New York; Bruce L. Gottlieb, General Counsel, ATLANTIC MEDIA, INC., Washington, D.C.; Jeffrey P. Hermes, CITIZEN MEDIA LAW PROJECT, Berkman Center For Internet & Society, Cambridge, Massachusetts; Joshua N. Pila, Regulatory Counsel, LIN MEDIA, Providence, Rhode Island; Charles D. Tobin, HOLLAND & KNIGHT LLP, Washington, D.C., for the National Press Club; Mickey H. Osterreicher, East Amherst, New York, for the National Press Photographers Association; Rene P. Milam, Vice President/General Counsel, NEWSPAPER ASSOCIATION OF AMERICA, Arlington, Virginia; Jennifer Borg, General Counsel, NORTH JERSEY MEDIA GROUP INC., Hackensack, New Jersey; Kathleen A. Kirby, WILEY REIN LLP, Washington, D.C., for the Radio Television Digital News Association; Bruce E. H. Johnson, DAVIS WRIGHT TREMAINE LLP, Seattle, Washington, for The Seattle Times Company; Bruce W. Sanford, Bruce D. Brown, Laurie A. Babinski, BAKER

HOSTETLER LLP, Washington, D.C., for the Society of Professional Journalists; Frank D. LoMonte, STUDENT PRESS LAW CENTER, Arlington, Virginia; Barbara W. Wall, Vice President, Senior Associate General Counsel, GANNETT CO., INC., McLean, Virginia, for USA Today; Megan Rhyne, VIRGINIA COALITION FOR OPEN GOVERNMENT, Williamsburg, Virginia, Amici Supporting Appellee.

---

## OPINION

WILKINSON, Circuit Judge:

The question here is whether Section 8(i)(1) of the National Voter Registration Act ("NVRA"), which requires public disclosure of "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters," 42 U.S.C. § 1973gg-6(i)(1), applies to completed voter registration applications. The district court concluded that Section 8(i)(1) does apply to such applications and held that defendants—Virginia election officials—had violated the NVRA by refusing to disclose the completed applications with voters' Social Security numbers redacted. Because the district court correctly interpreted Section 8(i)(1), we now affirm the judgment.

I.

Plaintiff Project Vote/Voting for America, Inc. ("Project Vote") is a nonprofit organization seeking to increase voter registration among young, low-income, and minority voters. This suit arose after Project Vote learned that students at Norfolk State University, a historically African-American college, experienced problems in registering to vote in the November 2008 primary and general elections in Virginia. In particular, Project Vote worried that the students' registration applica-

tions had been erroneously rejected by the Norfolk General Registrar, defendant Elisa Long, who is responsible for processing voter registration applications.

On May 11, 2009, a Project Vote affiliate—Advancement Project—requested that Registrar Long "make available for inspection and copying the completed voter registration applications of any individual who timely submitted an application at any time from January 1, 2008, through October 31, 2008, who was not registered to vote in time for the November 4, 2008 general election," as well as "documents identifying the reasons the applications were rejected." The request was made pursuant to NVRA Section 8(i)(1), which provides:

> Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.

42 U.S.C. § 1973gg-6(i)(1). Registrar Long responded to the request on May 13, 2009, indicating that she would not allow inspection or copying of the requested materials. Martha Brissette, an attorney and policy analyst with the Virginia State Board of Elections ("VSBE"), then emailed Advancement Project in support of Long's refusal.

On May 15, 2009, representatives from Project Vote and Advancement Project visited Registrar Long's office in person and repeated their request, which was again refused. Accordingly, the organizations wrote to the Secretary of the VSBE, giving notice that Registrar Long was allegedly violating NVRA Section 8(i)(1) and requesting remedial measures.

On September 25, 2009, VSBE forwarded to Project Vote and Advancement Project an informal opinion of the Attorney General of Virginia. The opinion concluded that "the completed voter registration application of any individual is not a part of the record of the implementation of programs and activities conducted for the purposes of ensuring the accuracy and currency of official lists of eligible voters covered by [the Public Disclosure Provision]." To date, defendants have not disclosed the requested records.

Project Vote filed a complaint against Registrar Long and the Secretary of the VSBE on February 16, 2010, alleging violations of Section 8(i)(1) and asking the court to require disclosure of the requested materials. Defendants moved to dismiss the complaint, asserting that Project Vote lacked standing to sue under the NVRA and that Section 8(i)(1) does not mandate public access to completed voter registration applications. The district court denied defendants' motion on October 29, 2010. The court concluded that plaintiff had standing and that "the common and ordinary meaning of the terms of [Section 8(i)(1)] encompass voter registration applications, as these records concern 'the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters.'" *Project Vote/Voting for America, Inc. v. Long*, 752 F. Supp. 2d 697, 708 (E.D. Va. 2010) (quoting 42 U.S.C. § 1973gg-6(i)(1)).

Project Vote then moved for summary judgment. Defendants opposed the motion, reasserting their original arguments and also claiming that the district court's interpretation of the NVRA was incompatible with two other federal statutes, the Help America Vote Act ("HAVA"), 42 U.S.C. § 15301 *et seq.*, and the Military and Overseas Voter Empowerment ("MOVE") Act, 42 U.S.C. § 1973ff *et seq.*On July 20, 2011, the district court entered final judgment in favor of Project Vote. Rejecting defendants' arguments based on HAVA and the MOVE Act, the court concluded that NVRA Section

8(i)(1) "grants the plaintiff access to completed voter registration applications with the voters' [Social Security numbers] redacted for inspection and photocopying." *Project Vote/Voting for America, Inc. v. Long*, 813 F. Supp. 2d 738, 743 (E.D. Va. 2011). The court subsequently stayed its judgment pending this appeal. *See* J.A. 449-52.

## II.

The NVRA reflects the view of Congress that the right to vote "is a fundamental right," that government has a duty to "promote the exercise of that right," and that discriminatory and unfair registration laws can have a "damaging effect on voter participation" and "disproportionately harm voter participation by various groups, including racial minorities." 42 U.S.C. § 1973gg(a). Congress enacted the NVRA in order to "increase the number of eligible citizens who register to vote" in federal elections, "enhance[ ] the participation of eligible citizens as voters," "protect the integrity of the electoral process," and "ensure that accurate and current voter registration rolls are maintained." *Id.* § 1973gg(b).

The NVRA directs states to establish at least three methods of voter registration for federal elections: "(1) by application made simultaneously with an application for a motor vehicle driver's license," "(2) by mail application" using a federally prescribed form, and "(3) by application in person" at designated voter registration agencies. *Id.* § 1973gg-2(a). It further requires that states conduct a general program to remove ineligible voters from official voter lists without engaging in improper voter removal. *Id.* § 1973gg-6(a)(3)-(4).

Finally, as explained above, Section 8(i)(1) of the NVRA mandates public disclosure of voter registration activities. *Id.* § 1973gg-6(i)(1). It generally requires states to "make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of

ensuring the accuracy and currency of official lists of eligible voters." *Id.* This language embodies Congress's conviction that Americans who are eligible under law to vote have every right to exercise their franchise, a right that must not be sacrificed to administrative chicanery, oversights, or inefficiencies. Under the district court's interpretation, this provision mandates disclosure of the records requested by Project Vote.

III.

A.

We begin by considering the Commonwealth's argument that the text of Section 8(i)(1) does not require public disclosure of completed voter registration applications. This issue of statutory interpretation is one that we review de novo. *United States v. Ide*, 624 F.3d 666, 668 (4th Cir. 2010). The starting point for any issue of statutory interpretation is of course the language of the statute itself. *United States v. Bly*, 510 F.3d 453, 460 (4th Cir. 2007). "[W]hen the words of a statute are unambiguous, . . . this first canon is also the last [and] judicial inquiry is complete." *Willenbring v. United States*, 559 F.3d 225, 235 (4th Cir. 2009) (internal quotation marks omitted).

Appellants assert that "[t]he plain and ordinary meaning of [Section 8(i)(1)] does not encompass voter applications, much less the rejected applications initially sought." Appellants' Br. at 10. Instead, they claim, the "'programs and activities' referred to in Section 8(i)(1) of the NVRA are programs and activities related to the purging of voters from the list of registered voters." *Id.* at 11.

Contrary to appellants' insistence, the plain language of Section 8(i)(1) does not allow us to treat its disclosure requirement as limited to voter removal records. As the district court concluded, completed voter registration applications are clearly "records concerning the implementation of programs and activities conducted for the purpose of ensuring

the accuracy and currency of official lists of eligible voters."
42 U.S.C. § 1973gg-6(i)(1).

First, the process of reviewing voter registration applications is a "program" and "activity." Under Virginia law, election officials must examine completed voter registration applications and register applicants that possess the necessary qualifications. *See* Va. Code § 24.2-417. This process of review is a "program" because it is carried out in the service of a specified end—maintenance of voter rolls—and it is an "activity" because it is a particular task and deed of Virginia election employees.

Moreover, the "program" and "activity" of evaluating voter registration applications is plainly "conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 42 U.S.C. § 1973gg-6(i)(1). It is unclear what other purpose it would serve. As the district court reasoned, the process of reviewing voter registration applications keeps official voter lists both "accurate"—free from error—and "current"—most recent. *See Project Vote*, 752 F. Supp. 2d at 706. Indeed, voter lists are not "accurate" or "current" if eligible voters have been improperly denied registration or if ineligible persons have been added to the rolls. *Id.* By registering eligible applicants and rejecting ineligible applicants, state officials "ensure that the state is keeping a 'most recent' and errorless account of which persons are qualified or entitled to vote within the state." *Id.* Accordingly, the process of assessing voter registration applications is a "program[ ] and activit[y] conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 42 U.S.C. § 1973gg-6(i)(1).

Furthermore, the registration applications requested by Project Vote are clearly "records concerning the implementation of" this "program[ ] and activit[y]." *Id.* The requested applications are relevant to carrying out voter registration activities because they are "the means by which an individual

provides the information necessary for the Commonwealth to determine his eligibility to vote." *Project Vote*, 752 F. Supp. 2d at 707. Without verification of an applicant's citizenship, age, and other necessary information provided by registration applications, state officials would be unable to determine whether that applicant meets the statutory requirements for inclusion in official voting lists. Thus, completed applications not only "concern[ ] the implementation of" the voter registration process, but are also integral to its execution.

Finally, "the fact that [Section 8(i)(1)] very clearly requires that '*all* records' be disclosed brings voter registration applications within its reach." *Id.* at 707-08 (emphasis added). As this court has recognized, "the use of the word 'all' [as a modifier] suggests an expansive meaning because 'all' is a term of great breadth." *Nat'l Coal. for Students with Disabilities Educ. & Legal Def. Fund v. Allen*, 152 F.3d 283, 290 (4th Cir. 1998). Given that the phrase "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters" unmistakably encompasses completed voter registration applications, such applications fall within Section 8(i)(1)'s general disclosure mandate.

B.

Although Section 8(i)(1) generally requires disclosure of applicable records, it creates exceptions "to the extent that such records relate [(1)] to a declination to register to vote or [(2)] to the identity of a voter registration agency through which any particular voter is registered." 42 U.S.C. § 1973gg-6(i)(1). The completed voter registration applications at issue here do not fall within either of these two exceptions. First, such applications represent attempts to become a registered voter, not "declination[s] to register to vote." Moreover, Virginia's voter registration application form does not contain any information related to "the identity of a voter registration agency through which any particular voter is registered." *See*

J.A. 66. Because the requested applications do not fall within either of these two exceptions—and because they are covered by Section 8(i)(1)'s general mandate—they must be made "available for public inspection and . . . photocopying." 42 U.S.C. § 1973gg-6(i)(1).

### C.

Appellants next argue that NVRA Section 8(i)(2)—which immediately follows Section 8(i)(1)—limits the records subject to public disclosure. Section 8(i)(2) provides:

> The records maintained pursuant to [Section 8(i)(1)] *shall include* lists of the names and addresses of all persons to whom notices described in subsection (d)(2) of this section are sent, and information concerning whether or not each such person has responded to the notice as of the date that inspection of the records is made.

*Id.* § 1973gg-6(i)(2) (emphasis added). According to appellants, the term "shall include" in Section 8(i)(2) "acts as a limitation, not an enlargement." Appellants' Br. at 16. Appellants assert that "[t]he records specifically identified by Congress in Section 8(i)(2) are those which should be disclosed under Section 8(i)(1)," and that "[b]ecause voter registration applications are not such records, they are not subject to [public disclosure]." *Id.*

Appellants' interpretation, under which only the documents described in Section 8(i)(2) must be disclosed, is incorrect for several reasons. First, the statute clearly states that "*all* records" falling under Section 8(i)(1) must be publicly disclosed, not just those explicitly listed in Section 8(i)(2). 42 U.S.C. § 1973gg-6(i)(1) (emphasis added). Moreover, as the district court recognized at the motion to dismiss hearing, the term "shall include" sets "a floor, not a ceiling." J.A. 223. Courts have repeatedly indicated that "shall include" is not

equivalent to "limited to." *See, e.g.*, *Nat'l Fed'n of the Blind v. FTC*, 420 F.3d 331, 338 (4th Cir. 2005) (stating that the language "shall include" is "not exhaustive," and merely indicates that the listed items, "among others," are covered by the relevant provision); *see also Samantar v. Yousuf*, 130 S. Ct. 2278, 2287 (2010); *P.C. Pfeiffer Co. v. Ford*, 444 U.S. 69, 77 n.7 (1979). Because Section 8(i)(2) merely describes a specific set of records that must be maintained—and not an exclusive list—it does not shield completed voter registration applications from Section 8(i)(1)'s public disclosure mandate.

### D.

In sum, the NVRA's disclosure requirement is not limited to voter removal records. The NVRA, including Section 8(i)(1), concerns voter registration, not simply voter removal. Notably, the statute is entitled the "National Voter *Registration* Act," 42 U.S.C. § 1973gg note (emphasis added), and is codified under a subchapter designated "National Voter *Registration*," *id.* § 1973gg *et seq.* (emphasis added). Moreover, Section 8(i)(1) is located in a section titled "Requirements with respect to administration of voter *registration*," *id.* § 1973gg-6 (emphasis added), and a subsection titled "Public disclosure of voter *registration* activities," *id.* § 1973-gg(6)(i) (emphasis added). These statutory labels reinforce the conclusion that Section 8(i)(1) governs voter registration records. *See INS v. Nat'l Ctr. for Immigrants' Rights, Inc.*, 502 U.S. 183, 189 (1991) (noting that "the title of a statute or section can aid in" textual interpretation). Because the NVRA requires disclosure of all materials described in Section 8(i)(1), including voter registration records, defendants must permit inspection of the completed applications, as instructed by the district court.

### IV.

Appellants further contend that the district court's interpretation of the NVRA causes the statute to conflict with HAVA

and the MOVE Act. Given that the requested registration applications unquestionably fall within the plain language of Section 8(i)(1), we need not look outside that plain language in construing the statute. Where "the language is plain and 'the statutory scheme is coherent and consistent,' there is no need to inquire further." *In re JKJ Chevrolet, Inc.*, 26 F.3d 481, 483 (4th Cir. 1994). Accordingly, we need not consider the impact of HAVA and the MOVE Act on the language of Section 8(i)(1), which clearly requires public disclosure of completed voter registration applications.

Appellants insist, however, that all three statutes address related electoral proceedings and that to interpret them at cross-purposes would lead to real confusion. We are not persuaded by this view. Even considering these statutes, both are entirely consistent with the district court's interpretation of Section 8(i)(1). The Help America Vote Act requires, among other things, that states establish a free access system through which provisional voters can determine whether their votes were counted, and if not, why not. 42 U.S.C. § 15482(a)(5)(B). The provision cited by appellants, HAVA Section 302(a), provides in relevant part: "The appropriate State or local official shall establish and maintain reasonable procedures necessary to protect the security, confidentiality, and integrity of personal information collected, stored, or otherwise used by the free access system . . . ." *Id.* § 15482(a). It also limits "[a]ccess to information about an individual provisional ballot . . . to the individual who cast the ballot." *Id.* According to appellants, these privacy provisions "would make no sense if Congress intended the same type of personal information to be publicly available under Section 8(i)(1) of the NVRA from voter applications." Appellants' Br. at 21.

Appellants' argument fails to recognize that HAVA's security provisions only concern the "personal information collected, stored, or otherwise used by the free access system," 42 U.S.C. § 15482(a), which allows the voter—and only the voter—to ascertain whether his ballot was counted.

HAVA therefore protects the right to the secret ballot, and does not pertain to the voter registration procedures governed by the NVRA. In addition, HAVA explicitly states that "nothing in this [Act] may be construed . . . to supersede, restrict, or limit the application of . . . The National Voter Registration Act." *Id.* § 15545(a). Thus, by its own terms, HAVA cannot restrict or limit the application of the NVRA's public disclosure requirement.

Appellants next point to the Military and Overseas Voter Empowerment Act as evidence that Congress did not want Section 8(i)(1) to apply to voter registration applications. The MOVE Act requires states to establish procedures "for absent uniformed services voters and overseas voters to request by mail and electronically voter registration applications and absentee ballot applications" and for states to send such applications by mail and electronically. *Id.* § 1973ff-1(a)(6). The Act further provides that

> [t]o the extent practicable, [these procedures] shall ensure that the privacy of the identity and other personal data of an absent uniformed services voter or overseas voter who requests or is sent a voter registration application or absentee ballot application . . . is protected throughout the process of making such request or being sent such application.

*Id.* § 1973ff-1(e)(6)(B). According to appellants, "it would make no sense to require these privacy protections if Congress understood and expected that the registration applications at the end of 'the process' would be made publicly available under Section 8(i)(1) of the NVRA." Appellants' Br. at 21.

Appellants' argument ignores the plain language of the MOVE Act, which expressly limits the application of its security and privacy provisions to personal data conveyed during the voter form request process. The provision cited by

appellants—42 U.S.C. § 1973ff-1(e)(6)(B)—ensures that the personal information of an overseas voter "who requests or is sent a voter registration application or absentee ballot application . . . is protected *throughout the process of making such request or being sent such application*" (emphasis added). Likewise, § 1973ff-1(e)(6)(A) requires states to "ensure that the procedures established under subsection (a)(6) protect the security and integrity of the voter registration and absentee ballot application *request processes*." 42 U.S.C. § 1973ff-1(e)(6)(A) (emphasis added). Because these privacy provisions protect information transmitted during the process of *requesting*—not submitting—a registration application, the MOVE Act does not conflict with the NVRA's requirement that completed applications be disclosed.

V.

Finally, appellants' proffered privacy concerns do not necessitate reversal of the district court's decision. In support of their argument to the contrary, appellants point to *Greidinger v. Davis*, 988 F.2d 1344 (4th Cir. 1993), in which we held that a statute that conditions voting on public release of a voter's Social Security number "creates an intolerable burden on that right as protected by the First and Fourteenth Amendments." *Id.* at 1355. *Greidinger* is inapposite here, however, because the district court did not require public disclosure of Social Security numbers, which the court recognized "are uniquely sensitive and vulnerable to abuse." *Project Vote*, 752 F. Supp. 2d at 711-12. The district court expressly concluded that Section 8(i)(1) "grants the plaintiff access to completed voter registration applications *with the voters' SSNs redacted* for inspection and photocopying." *Project Vote*, 813 F. Supp. 2d at 743 (emphasis added). Plaintiff has never requested completed applications with unredacted Social Security numbers and does not object to the district court's redaction requirement. Accordingly, there is no danger that this uniquely sensitive information will be compromised by Section 8(i)(1)'s public disclosure requirement.

Appellants next argue that "information other than appli-
cants' SSNs, such as responses to requests regarding criminal
history, mental incompetency, and even home addresses,
phone numbers, and birth dates implicate real privacy inter-
ests." Appellants' Reply Br. at 20. Because the Virginia voter
registration application form requires this personal informa-
tion, appellants contend, "it must be reasonably supposed that
conditioning voting on the public release of such information
will suppress registration contrary to congressional intent."
Appellants' Br. at 22.

We do not think appellants' privacy concerns unfounded.
By requiring public disclosure of personal information,* Sec-
tion 8(i)(1) may conceivably inhibit voter registration in some
instances. However, this potential shortcoming must be bal-
anced against the many benefits of public disclosure. It is self-
evident that disclosure will assist the identification of both
error and fraud in the preparation and maintenance of voter
rolls. State officials labor under a duty of accountability to the
public in ensuring that voter lists include eligible voters and
exclude ineligible ones in the most accurate manner possible.
Without such transparency, public confidence in the essential
workings of democracy will suffer.

It is not the province of this court, however, to strike the
proper balance between transparency and voter privacy. That
is a policy question properly decided by the legislature, not
the courts, and Congress has already answered the question by
enacting NVRA Section 8(i)(1), which plainly requires disclo-

---

*It is not clear, however, that applicants need to disclose information
regarding felony convictions and rulings on mental incapacity, as 42
U.S.C. § 1973gg-4(a)(1) requires states to accept and use the federal voter
registration form, which does not ask for such information, *see* U.S. Elec-
tion Assistance Commission, Register To Vote in Your State by Using
This Postcard Form and Guide (2006). Moreover, appellants' position
with respect to prior felony convictions and mental incapacity appears to
discount the extent to which such information may already be a matter of
public record.

sure of completed voter registration applications. Public disclosure promotes transparency in the voting process, and courts should be loath to reject a legislative effort so germane to the integrity of federal elections.

## VI.

In the end, appellants ask us to revisit issues already resolved by the Congress. It may or may not be that Section 8(i)(1) is the most effective means of promoting the NVRA's stated purposes. The public disclosure provision may or may not "increase the number of eligible citizens who register to vote" in federal elections and "enhance[ ] the participation of eligible citizens as voters." 42 U.S.C. § 1973gg(b). But this debate belongs in the legislative arena, not the courts. We also decline to address every particular question that may arise with respect to the implementation of Section 8(i)(1). That is best left to the trial court upon remand. We do hold, however, that completed voter registration applications are subject to disclosure under the NVRA, as they are unquestionably "records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." *Id.* § 1973gg-6(i)(1). Where, as here, "the statute's language is plain, the sole function of the courts . . . is to enforce it according to its terms." *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) (internal quotation marks omitted). Accordingly, we affirm the judgment and remand for further proceedings consistent with this decision.

*AFFIRMED AND REMANDED*