**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 22-7371**

───────────────

ALAN D. DORRBECKER,

        Petitioner – Appellant,

    v.

COMMANDER KEVIN P. HOWARD, Naval Consolidated Brig Charleston, South Carolina,

        Respondent – Appellee,

    and

COMMANDER, UNITED STATES NAVY; COMMANDANT, NAVAL BRIG CHARLESTON,

        Respondents.

───────────────

Appeal from the United States District Court for the District of South Carolina, at Beaufort. Joseph F. Anderson, Jr., Senior District Judge. (9:21-cv-1953-JFA)

───────────────

Argued: January 25, 2024                  Decided: April 17, 2026

───────────────

Before THACKER, HARRIS, and RUSHING, Circuit Judges.

───────────────

Affirmed by published opinion. Judge Rushing wrote the opinion, in which Judge Thacker and Judge Harris joined.

───────────────

**ARGUED:** Robert Allan Feldmeier, THE LAW OFFICES OF ROBERT FELDMEIER, Raleigh, North Carolina, for Appellant. Martin L. Holmes, Jr., OFFICE OF THE UNITED STATES ATTORNEY, Charleston, South Carolina, for Appellee. **ON BRIEF:** Adair F. Boroughs, United States Attorney, Columbia, South Carolina, Andrew R. de Holl, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, South Carolina, for Appellee.

RUSHING, Circuit Judge:

A general court-martial convicted former United States Navy Captain Alan Dorrbecker of attempted sexual assault of a child and attempted sexual abuse of a child, among other offenses. The military judge sentenced Dorrbecker to eight years' confinement and dismissed him from the Navy. In a published opinion, the Navy-Marine Corps Court of Criminal Appeals affirmed Dorrbecker's convictions. The Court of Appeals for the Armed Forces denied further review. Dorrbecker then petitioned for a writ of habeas corpus in federal district court, arguing that the military courts lacked subject-matter jurisdiction over his offenses. The district court disagreed and dismissed Dorrbecker's petition. We affirm.

## I.

### A.

While stationed at a U.S. military base in Italy in 2015, Dorrbecker met a 14-year-old girl, S.M., at the base library.[1] S.M. worked at the library as a part-time summer employee. After a discussion about books, Dorrbecker gave S.M. his email address so that she could contact him for information about a website offering free books. They emailed each other for about a week.

S.M.'s parents—who worked for the Naval Criminal Investigative Service (NCIS)—learned that Dorrbecker was communicating with their daughter. Suspecting that

---

[1] The facts in this section are taken from the opinion of the Navy-Marine Corps Court of Criminal Appeals. *See United States v. Dorrbecker*, 79 M.J. 558, 560–562 (N-M. Ct. Crim. App. 2019).

3

Dorrbecker may have been trying to groom S.M., NCIS opened an investigation. As part of the investigation, an NCIS agent assumed S.M.'s online identity and began emailing Dorrbecker.

"After NCIS assumed the persona of S.M., the subject matter of the[] conversations changed from books, music, school, and family life to overtly sexual topics." *Dorrbecker*, 79 M.J. at 560. Dorrbecker "initiated the sexual tone of the conversations, leading to the sharing of sexually charged stories that he called 'tales of the bizarre.'" *Id.* In these stories, Dorrbecker explicitly described various degrading sex acts.

After months of emails back and forth, the NCIS agent posing as S.M. told Dorrbecker that "she would be house- and dog-sitting the next weekend." *Id.* at 562. The agent proposed a sleepover. "[E]xcite[d] about the prospect" of spending two nights alone with S.M., Dorrbecker agreed. *Id.* He told S.M. that the two "could cuddle up on the couch and watch movies," that he was "[c]ounting the hours until [their] embrace," and that his "crime of passion cometh." *Id.* (internal quotation marks omitted). His emails stated, however, that he and S.M. would "discuss" any sexual acts "openly, honestly before proceeding," and that they would "talk about it together" when they met. *Id.* (internal quotation marks omitted).

On the agreed date, Dorrbecker "showed up at the arranged on-base house with a bouquet of flowers, wine, food for dinner, . . . movies . . . , a souvenir piggy bank, his journal, and an overnight bag containing a change of clothes, toiletries, four condoms, and four packages of sexual lubricant." *Id.* NCIS agents arrested Dorrbecker when he entered the house. As Dorrbecker stipulated at trial, he "was prepared if S.M. wanted to have sex."

4

*Id.* (internal quotation marks omitted).  He also knew at the time that S.M. was 15 years old.

B.

Dorrbecker was charged in a general court-martial with five specifications of attempted sexual abuse of a child and two specifications of attempted sexual assault of a child (charge I), one specification of violating a lawful general order (charge II), and one specification of conduct unbecoming an officer and a gentleman (charge III).  *See* Uniform Code of Military Justice (UCMJ) arts. 80, 92, 133, 10 U.S.C. §§ 880, 892, 933.[2] Dorrbecker pled guilty to two specifications of attempted sexual abuse of a child, and the case proceeded to trial before a military judge on the other specifications.  The military judge convicted Dorrbecker of one specification of attempted sexual assault of a child, an additional two specifications of attempted sexual abuse of a child, the one specification of violating a lawful general order, and the one specification of conduct unbecoming an officer and a gentleman.  Dorrbecker was sentenced to eight years' confinement and was dismissed from the Navy.

Dorrbecker appealed to the Navy-Marine Corps Court of Criminal Appeals, which affirmed Dorrbecker's convictions.  *See Dorrbecker*, 79 M.J. 558.  As relevant here, the court rejected Dorrbecker's contention that the evidence was factually and legally insufficient to support his convictions on specification 5 (attempted sexual assault of a

---

[2] In the military court system, "[a] charge states the article of the UCMJ . . . which the accused is alleged to have violated."  Rule for Courts-Martial (RCM) 307(c)(2).  "A specification is a plain, concise, and definite statement of the essential facts constituting the offense charged."  RCM 307(c)(3).

5

child) and specification 7 (attempted sexual abuse of a child) of charge I. Dorrbecker argued that because his intent to engage in sexual acts with S.M. "was conditional on S.M.'s consent to physical contact and sexual intercourse," he was not guilty of the attempt specifications, both of which required specific intent. *Id.* at 563. The court disagreed, explaining that though attempt under the UCMJ requires specific intent to commit the underlying crime, Dorrbecker's argument failed because "the condition on [his] intended actions with S.M.—namely that he would seek her actual consent before kissing her and having sexual intercourse with her—[did] not negate [his] specific intent to do those things." *Id.* at 566. A dissenting judge disagreed. *See id.* at 567–568 (Hitesman, J., dissenting). Dorrbecker petitioned the Court of Appeals for the Armed Forces (CAAF) for further review, but that court denied his petition. *See United States v. Dorrbecker*, 79 M.J. 298 (C.A.A.F. 2019).

C.

Having exhausted his avenues for relief in the military courts, Dorrbecker filed a petition for a writ of habeas corpus in federal district court seeking to set aside his court-martial convictions. *See* 28 U.S.C. § 2241. First, he reiterated that attempt under the UCMJ requires specific, not conditional, intent, and that the military courts erred in holding otherwise. Second, he claimed that the military courts lacked subject-matter jurisdiction over his convictions because the NATO Status of Forces Agreement (SOFA or Agreement) between the United States and Italy stripped the United States of jurisdiction over his offenses.

6

A magistrate judge recommended denying Dorrbecker's habeas petition, and the district court agreed. *See Dorrbecker v. Mincey*, No. 9:21-cv-01953, 2022 WL 5237080 (D.S.C. July 18, 2022), *report & recommendation adopted*, 2022 WL 4494293 (D.S.C. Sept. 28, 2022). The district court explained that Dorrbecker's argument about the intent required for attempt offenses under the UCMJ was not a challenge to the court-martial's jurisdiction. 2022 WL 4494293, at *11. And because the military courts "gave th[e] issue full and fair consideration," Dorrbecker could not relitigate the issue in federal court. *Id.* As for Dorrbecker's objections regarding the NATO SOFA, the district court concluded that Dorrbecker lacked standing to enforce the pertinent provisions of the Agreement and, even if Dorrbecker could enforce them, his argument was nevertheless meritless. *See id.* at *2–10.

Dorrbecker timely appealed, and we have jurisdiction under 28 U.S.C. § 1291.[3]

## II.

The Supreme Court "repeatedly has recognized that, of necessity, '[m]ilitary law is a jurisprudence which exists separate and apart from the law which governs in our federal judicial establishment.'" *Schlesinger v. Councilman*, 420 U.S. 738, 746 (1975) (ellipsis omitted) (quoting *Burns v. Wilson*, 346 U.S. 137, 140 (1953) (plurality opinion)). Thus, though federal courts have "jurisdiction over applications for habeas corpus from persons confined by the military courts," "the scope of matters open for review" is "narrow." *Burns*, 346 U.S. at 139; *see Ward v. United States*, 982 F.3d 906, 912 (4th Cir. 2020).

---

[3] "[W]e review a district court's dismissal of a habeas petition de novo." *Plymail v. Mirandy*, 8 F.4th 308, 316 n.2 (4th Cir. 2021).

7

We may "assess . . . de novo" legal challenges to the military courts' jurisdiction. *Willenbring v. United States*, 559 F.3d 225, 232 (4th Cir. 2009); *see also United States v. Grimley*, 137 U.S. 147, 150 (1890) ("It cannot be doubted that the civil courts may in any case inquire into the jurisdiction of a court-martial, and, if it appears that the party condemned was not amenable to its jurisdiction, may discharge him from the sentence."); *Fricke v. Sec'y of Navy*, 509 F.3d 1287, 1290 (10th Cir. 2007) ("[O]ur review of jurisdictional issues is independent of the military courts' consideration of such issues."). But when it comes to a petitioner's non-jurisdictional claims, our review is limited to determining whether the military courts have "dealt fully and fairly with" the claims. *Burns*, 346 U.S. at 142. If "the military [courts] have given fair consideration to . . . the[] claims," *id.* at 144, then we "cannot review" them, *Ward*, 982 F.3d at 912 (internal quotation marks omitted). In other words, "[w]here there is no colorable jurisdictional question, a finding of full and fair consideration ends our habeas corpus inquiry." *Witham v. United States*, 355 F.3d 501, 505 (6th Cir. 2004).

Here, Dorrbecker asserts what he characterizes as two jurisdictional challenges to his convictions. We address each in turn and ultimately conclude that both fail.

A.

In his first claim of error, Dorrbecker contends that the court-martial lacked subject-matter jurisdiction to convict him of specifications 5 and 7 of charge I, the first of which charged Dorrbecker with attempted sexual assault of a child and the second of which charged him with attempted sexual abuse of a child. *See* UCMJ art. 80, 10 U.S.C. § 880(a) ("An act, done with specific intent to commit an offense under this chapter, amounting to

8

more than mere preparation and tending, even though failing, to effect its commission, is an attempt to commit that offense."); UCMJ art. 120b, 10 U.S.C. § 920b(b), (c) (punishing sexual assault and sexual abuse of a child). He also argues that even if the court-martial did have subject-matter jurisdiction, the military courts did not fully and fairly consider his challenge to those specifications, and so a federal court should review the merits of his argument. Neither contention succeeds.

1.

Dorrbecker claims that the court-martial lacked subject-matter jurisdiction to convict him of attempted sexual assault of a child and attempted sexual abuse of a child because attempt under the UCMJ requires specific intent to commit the underlying crime but he had only conditional intent to assault and abuse S.M. We disagree.

"'Generally, there are three prerequisites that must be met for courts-martial jurisdiction to vest . . . .'" *United States v. Nealy*, 71 M.J. 73, 75 (C.A.A.F. 2012) (quoting *United States v. Harmon*, 63 M.J. 98, 101 (C.A.A.F. 2006)). First, the "offenses with which [the] petitioner was charged" must be "proscribed by" the UCMJ. *Solorio v. United States*, 483 U.S. 435, 438–439 (1987); *see* UCMJ art. 18, 10 U.S.C. § 818(a) (providing that "general courts-martial have jurisdiction to try persons subject to this chapter for any offense made punishable by this chapter"). Second, "the accused in the court-martial proceeding [must be] a person who can be regarded as falling within the term 'land and naval Forces.'" *Solorio*, 483 U.S. at 439 (internal quotation marks omitted); *see id.* (explaining that the Constitution "condition[s] the proper exercise of court-martial jurisdiction over an offense on . . . the military status of the accused"). And third, there

9

must be "a properly convened and composed court-martial." *Nealy*, 71 M.J. at 75 (internal quotation marks omitted); *accord Willenbring*, 559 F.3d at 231 ("[A] court-martial proceeding must be convened and constituted in conformity with the applicable statutes, specifically the UCMJ; otherwise the military court lacks jurisdiction.").

All three prerequisites were met here. The challenged offenses that Dorrbecker was convicted of committing—attempted sexual assault of a child and attempted sexual abuse of a child—are "proscribed by" the UCMJ. *Solorio*, 483 U.S. at 438–439; *see* UCMJ art. 80, 10 U.S.C. § 880(a) (attempt); UCMJ art. 120b, 10 U.S.C. § 920b(b), (c) (sexual assault of a child and sexual abuse of a child). Dorrbecker also fell "within the term 'land and naval Forces'" because he "was a member of the Armed Services at the time of the offense charged." *Solorio*, 483 U.S. at 439, 451. And finally, other than his treaty-based argument, which we address below, Dorrbecker does not dispute that the court-martial here was "properly convened and composed." *Nealy*, 71 M.J. at 75 (internal quotation marks omitted). The military courts thus had subject-matter jurisdiction.

Dorrbecker resists this conclusion by claiming the evidence was legally insufficient to support his attempt convictions. In his view, the military courts erred in holding "that the condition on [Dorrbecker's] intended actions with S.M.—namely that he would seek her actual consent before kissing her and having sexual intercourse with her—[did] not negate [Dorrbecker's] specific intent to do those things." *Dorrbecker*, 79 M.J. at 566. According to Dorrbecker, "an intent with a condition attached to it is not a specific intent," and because attempt under the UCMJ requires specific intent, he necessarily was convicted of an offense that "does not constitute attempt under Article 80, UCMJ" and therefore the

10

military courts acted without subject-matter jurisdiction.  Opening Br. 10; *see Solorio*, 483 U.S. at 438–439 (explaining that "Congress has empowered courts-martial to try servicemen for the crimes proscribed by the U.C.M.J.").  Dorrbecker's argument confuses subject-matter jurisdiction with the merits of his convictions.

Subject-matter jurisdiction "'defines the court's authority to hear a given type of case.'"  *United States v. Moran*, 70 F.4th 797, 802 (4th Cir. 2023) (quoting *United States v. Morton*, 467 U.S. 822, 828 (1984)).  That is, subject-matter jurisdiction concerns a court's "statutory or constitutional *power* to adjudicate [a] case."  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998); *see also Wachovia Bank v. Schmidt*, 546 U.S. 303, 316 (2006) (explaining that subject-matter jurisdiction refers to a court's "competence to adjudicate a particular category of cases").  It generally does not turn on whether the substantive "elements" of an offense are "satisfied."  *Moran*, 70 F.4th at 802–803.

Congress "has empowered courts-martial to try servicemen for the crimes proscribed by the U.C.M.J."  *Solorio*, 483 U.S. at 438–439; *see, e.g.*, UCMJ art. 18, 10 U.S.C. § 818(a) (granting jurisdiction to general courts-martial).  Attempted sexual assault of a child and attempted sexual abuse of a child—the challenged offenses for which Dorrbecker was convicted—are two such crimes.  UCMJ art. 80, 10 U.S.C. § 880(a); UCMJ art. 120b, 10 U.S.C. § 920b(b), (c).  Thus, the military courts "possessed the statutory authority to try" and convict Dorrbecker of those offenses.  *Solorio*, 483 U.S. at 438–439 (finding the military courts had subject-matter jurisdiction to try the charged offenses because the "offenses with which petitioner was charged are each *described in* the

11

U.C.M.J." (emphasis added)).  Subject-matter jurisdiction was therefore not lacking for the reasons Dorrbecker suggests.

Dorrbecker's objection that the military courts legally erred in finding that he possessed the requisite intent to be guilty of attempt under the UCMJ—a question we do not reach—does not convert his challenge into one about subject-matter jurisdiction.  A federal court "acts equally within its jurisdiction whether it decides a man to be guilty or innocent under the criminal law, and whether its decision is right or wrong."  *Lamar v. United States*, 240 U.S. 60, 65 (1916); *see Moran*, 70 F.4th at 802–803 (rejecting a defendant's argument that a district court lacked subject-matter jurisdiction because the "elements [of a criminal offense] were not satisfied").  The Supreme Court likewise has made clear that errors in the course of resolving a charge do not implicate a court-martial's subject-matter jurisdiction.  *See Hiatt v. Brown*, 339 U.S. 103, 111 (1950) ("In this case the court-martial had jurisdiction of the person accused and the offense charged, and acted within its lawful powers.  The correction of any errors [a court-martial] may have committed is for the military authorities which are alone authorized to review its decision.").

Indeed, the D.C. Circuit recently addressed and rejected an argument very similar to the one Dorrbecker makes here.  In *Forbes v. Phelan*, the petitioner claimed "that the court-martial lacked subject matter jurisdiction over the sexual assault charges against him because the underlying specification was based upon a theory of liability not contained within the UCMJ."  153 F.4th 73, 82 (D.C. Cir. 2025) (internal quotation marks omitted); *compare* Opening Br. 13 (arguing that "a claim that the UCMJ does not criminalize a theory

12

of criminal liability is a jurisdictional claim"). According to the petitioner in *Phelan*, "Congress did not intend a service member's failure to disclose his minimally contagious HIV-positive status to vitiate his partner's informed consent," and the military courts' holding otherwise placed them outside their subject-matter jurisdiction. *Phelan*, 153 F.4th at 82. The D.C. Circuit rejected the petitioner's jurisdictional characterization, explaining that "th[e] dispute over the adequacy of the specification to state an element of the offense goes to the merits of [the petitioner's] case; it does not deprive a court of jurisdiction to hear it." *Id.* (internal quotation marks, brackets, and ellipsis omitted).

The same principle applies here. Dorrbecker claims he was convicted of specifications 5 and 7 of charge I based on "a theory of [attempt] liability which the UCMJ does not criminalize": conditional intent. Opening Br. 13. But in line with the D.C. Circuit's observation in *Phelan*, "th[e] dispute over the adequacy of [the evidence] to [prove] an element of the offense goes to the merits" of Dorrbecker's case—not the military courts' jurisdiction to hear it. 153 F.4th at 82.

At bottom, "alleged errors of law or fact," which Dorrbecker asserts here, are "distinguished from error in asserting jurisdiction." *Fischer v. Ruffner*, 277 F.2d 756, 757–758 (5th Cir. 1960) (citing *Hiatt*, 339 U.S. at 111). Jurisdictional errors occur where a military court's decision is "void because of an *absolute want of power*." *Carter v. McClaughry*, 183 U.S. 365, 401 (1902) (emphasis added). As explained above, that is not what Dorrbecker argues here. Rather, Dorrbecker claims that the military courts legally erred. Such an error, if it occurred, constitutes only "defective exercise of power possessed." *Id.* It is not jurisdictional. *See id.*; *see also Lamar*, 240 U.S. at 65.

13

Dorrbecker's challenge to specifications 5 and 7 of charge I thus goes to the merits of his convictions—not the military courts' subject-matter jurisdiction.

2.

Having determined that Dorrbecker's claim is actually about the merits of his convictions, we must now consider whether the military courts "dealt fully and fairly with" the claim. *Burns*, 346 U.S. at 142. This Court has "yet to [elaborate on] the 'full and fair consideration' standard" announced by the Supreme Court in *Burns*. *Dorrbecker*, 2022 WL 5237080, at *4; *see Ward*, 982 F.3d at 912–913 (avoiding the issue and affirming on the merits); *Kasey v. Goodwyn*, 291 F.2d 174, 178 (4th Cir. 1961) (same). And other circuits' "case law interpreting the full and fair consideration test lacks uniformity." *Armann v. McKean*, 549 F.3d 279, 289 n.10 (3d Cir. 2008) (collecting cases). That said, a straightforward reading of *Burns* shows that the military courts indeed "dealt fully and fairly with" Dorrbecker's conditional intent argument. *Burns*, 346 U.S. at 142. We therefore "cannot review" the merits of Dorrbecker's claim. *Ward*, 982 F.3d at 912 (internal quotation marks omitted).[4]

---

[4] In their briefs, the parties utilize a four-factor test used by the Fifth and Tenth Circuits to "determin[e] whether review of a military conviction on habeas corpus is appropriate." *Dodson v. Zelez*, 917 F.2d 1250, 1252 (10th Cir. 1990) (citing *Calley v. Callaway*, 519 F.2d 184, 199–203 (5th Cir. 1975)). Under that test, (1) "[t]he asserted error must be of substantial constitutional dimension"; (2) "[t]he issue must be one of law rather than of disputed fact already determined by the military tribunals"; (3) "[m]ilitary considerations may warrant different treatment of constitutional claims"; and (4) "[t]he military courts must give adequate consideration to the issues involved and apply proper legal standards." *Id.* at 1252–1253 (internal quotation marks omitted). We need not opine on or adopt this four-factor test today.

14

In *Burns*, the petitioners alleged on habeas review "that they had been denied due process of law in the proceedings which led to their conviction by the courts-martial." 346 U.S. at 138. Their claims included allegations of being "arrested and confined incommunicado," "continuous questioning without being informed of their rights," planted evidence, denial of counsel, and coercion of witnesses and confessions. *Id.* at 143. The Supreme Court noted that the petitioners' applications "set forth serious charges—allegations which, in their cumulative effect, were sufficient to depict fundamental unfairness in the process whereby their guilt was determined and their death sentences rendered." *Id.* at 142.

Even so, the Court found it "plain that the military courts ha[d] heard petitioners out on every significant allegation." *Id.* at 144. For that reason, the Court affirmed the denial of their habeas petitions. *See id.* at 146. As the Court explained, "[t]he military reviewing courts scrutinized the trial records before rejecting petitioners' contentions." *Id.* at 144. "In lengthy opinions, they concluded that petitioners had been accorded a complete opportunity to establish the authenticity of their allegations, and had failed." *Id.* And at least some of the petitioners' allegations "were either explored or were available for exploration at the trial." *Id.* at 145. Overall, the petitioners "failed to show that th[e] military review was legally inadequate to resolve the claims which they . . . urged upon the civil courts." *Id.* at 146. Accordingly, "due regard for the limitations on a civil court's power" "preclude[d]" any opportunity for the petitioners to prove in the district court "precisely the case which they failed to prove in the military courts." *Id.*; *see id.* at 142

15

("Had the military courts manifestly refused to consider those claims, the District Court was empowered to review them *de novo*.").

The record here similarly shows that the military courts "heard [Dorrbecker] out on" his argument that conditional intent negates the specific intent required to prove an attempt offense under the UCMJ. *Id.* at 144. Beginning with the pretrial and trial proceedings, nowhere does Dorrbecker suggest that his conditional intent argument was not "explored" or at least "available for exploration at the trial." *Id.* at 145.

Moving to the appeal, it is clear that the Navy-Marine Corps Court of Criminal Appeals "fully and fairly" considered Dorrbecker's intent argument in its published opinion. *Id.* at 142. On appeal from his convictions, Dorrbecker argued to that court what he argues to us now: "that notwithstanding his *desire* to kiss, touch, and have sex with S.M., he did not have the *specific intent* to do so when he was apprehended because he and S.M. had not finalized 'their decision.'" *Dorrbecker*, 79 M.J. at 564. That is, he explicitly argued that the evidence was legally insufficient because his intent "was conditional on S.M.'s consent to physical contact and sexual intercourse." *Id.* at 563.

After laying out the standards for factual and legal sufficiency, *id.*, listing the elements of the crimes Dorrbecker was convicted of, *id.* at 563–564, reviewing in detail the evidence proffered at trial, *id.* at 564–565, and specifically addressing Dorrbecker's legal argument, *id.* at 565–566, the court rejected Dorrbecker's claim. Specifically, the court held that the Supreme Court's decision in *Holloway v. United States*, 526 U.S. 1 (1999), and the Illinois Supreme Court's decision in *People v. Connors*, 97 N.E. 643 (Ill. 1912), supported "hold[ing] that the condition on [Dorrbecker's] intended actions with

16

S.M. . . . [did] not negate [Dorrbecker's] specific intent to do those things." *Dorrbecker*, 79 M.J. at 566. A dissenting judge disagreed, arguing that the majority's cited cases were "distinguishable." *Id.* at 568 (Hitesman, J., dissenting).

We are satisfied that the military courts "dealt fully and fairly with" Dorrbecker's contention that his conditional intent negated any specific intent to sexually assault or abuse S.M. *Burns*, 346 U.S. at 142. The Navy-Marine Corps Court of Criminal Appeals thoroughly reviewed the trial record and rejected Dorrbecker's claim in a reasoned, detailed opinion. *See id.* at 144–145. That Dorrbecker contends the court erred is immaterial. As the Supreme Court has explained, "[i]t is the limited function of the civil courts to determine whether the military have given fair consideration" to a petitioner's claims. *Id.* at 144; *accord Ward*, 982 F.3d at 912 (internal quotation marks omitted). And here, the military courts did so.

In a last attempt to secure federal-court review of his convictions, Dorrbecker suggests that full and fair consideration was lacking because the Court of Appeals for the Armed Forces—the military's highest court—summarily declined review of his case. *See Dorrbecker*, 79 M.J. 298 (denying petition for grant of review). We reject this argument, too.

Other courts of appeals have found full and fair consideration by the military courts even where the CAAF denied a petition for review. *See, e.g., Watson v. McCotter*, 782 F.2d 143, 144–145 (10th Cir. 1986) (finding full and fair consideration even though the CAAF's predecessor "denied further review"); *United States ex rel. Thompson v. Parker*, 399 F.2d 774, 776–777 (3d Cir. 1968) (same). We do the same here. Dorrbecker was

17

allowed to, and did, file a petition with the CAAF attempting to show that there was "'good cause'" to review his convictions. *M.W. v. United States*, 83 M.J. 361, 364 (C.A.A.F. 2023) (quoting UCMJ art. 67(a)(3), 10 U.S.C. § 867(a)(3)). And in that petition, Dorrbecker argued at length that his conditional intent was insufficient to support his attempt convictions. After reviewing the petition, the CAAF denied it.

Dorrbecker identifies no authority holding that the CAAF's denial of a petition for review renders the military's review as a whole "legally inadequate to resolve" an accused's claims. *Burns*, 346 U.S. at 146. And such a holding would run directly contrary to other circuits' precedent. *See Watson*, 782 F.2d at 144–145; *Thompson*, 399 F.2d at 776–777. The process here, including the Navy-Marine Corps Court of Criminal Appeals' detailed opinion and the CAAF's summary denial of Dorrbecker's petition for review, shows that the military courts did not "manifestly refuse[] to consider" Dorrbecker's claim. *Burns*, 346 U.S. at 142.

For these reasons, we conclude that the military courts "fully and fairly" considered Dorrbecker's claim that his conditional intent was legally insufficient to support his attempt convictions. *Id.* We therefore "cannot review" the merits of that claim. *Ward*, 982 F.3d at 912 (internal quotation marks omitted).

### B.

Dorrbecker next argues that the NATO SOFA between the United States and Italy stripped the United States of jurisdiction over his offenses. In Dorrbecker's view, the SOFA gave Italy the primary right to prosecute him. And because Italy did not waive its

primary right, Dorrbecker argues, the United States military courts lacked subject-matter jurisdiction over his offenses. We reject this challenge, too.

"On June 19, 1951, the United States of America and [Italy], among others, signed the 'Agreement Between the Parties to the North Atlantic Treaty Regarding the Status of their Forces'"—i.e., the NATO SOFA. *Plaster v. United States*, 720 F.2d 340, 342 (4th Cir. 1983); *see* Status of Forces Agreement Between the United States of America and Other Governments, June 19, 1951, 4 U.S.T. 1792; *United States v. Ashby*, 68 M.J. 108, 118–119 (C.A.A.F. 2009) (observing that Italy is a signatory to the 1951 NATO SOFA). As relevant here, "Article VII of the SOFA Treaty provided rules for determining which country would exercise jurisdiction over servicemen who, while stationed overseas, committed crimes punishable both under the civilian laws of the host country" (here, Italy) "and the military laws of the sending country" (here, the United States). *Plaster*, 720 F.2d at 342.

Section 3 of Article VII provides that "[i]n cases where the right to exercise jurisdiction is concurrent the following rules shall apply":

> (a) The military authorities of the sending State [the United States] shall have the primary right to exercise jurisdiction over a member of a force or of a civilian component in relation to
>
> > (i) offences solely against the property or security of that State, or offences solely against the person or property of another member of the force or civilian component of that State or of a dependent;
> >
> > (ii) offences arising out of any act or omission done in the performance of official duty.
>
> (b) In the case of any other offence the authorities of the receiving State [Italy] shall have the primary right to exercise jurisdiction.

19

> (c) If the State having the primary right decides not to exercise jurisdiction, it shall notify the authorities of the other State as soon as practicable. The authorities of the State having the primary right shall give sympathetic consideration to a request from the authorities of the other State for a waiver of its right in cases where that other State considers such waiver to be of particular importance.

NATO SOFA art. VII, § 3.

We will assume, purely for the sake of argument and without deciding the issue, that Dorrbecker is correct that Italy had "the primary right to exercise jurisdiction" under Section 3(b) and that, because Italy did not "waive[]" its right under Section 3(c), the United States military violated the NATO SOFA by prosecuting him. For even if Dorrbecker were correct, any SOFA violation did not deprive the United States military courts of subject-matter jurisdiction to try him for his offenses. And Dorrbecker cannot assert Italy's rights under the SOFA as a basis to set aside his court-martial convictions.

First, the NATO SOFA does not suggest that the existence of the United States' jurisdiction turned on Italy's waiver of its "primary right to exercise jurisdiction." NATO SOFA art. VII, § 3(b). To the contrary, the Agreement provides generally that "the military authorities of the [United States] shall have the right to exercise within [Italy] all criminal and disciplinary jurisdiction conferred on [it] by the law of the [United States] over all persons subject to the military law of [the United States]." NATO SOFA art. VII, § 1(a). The provision that Dorrbecker contends stripped the United States of subject-matter jurisdiction itself contemplates that both the United States and Italy had "concurrent" jurisdiction over his offenses. NATO SOFA art. VII, § 3. True, under Dorrbecker's reading, Italy had the "primary right to exercise" its jurisdiction. *Id.* But all that means is

20

that the United States had the secondary right to exercise its jurisdiction so long as that jurisdiction existed as an initial matter. *See Primary*, *Black's Law Dictionary* (4th rev. ed. 1968) (defining "primary" to mean "[f]irst; principal; chief; leading. First in order of time, or development, or in intention."). And as we explained above, the United States military courts had subject-matter jurisdiction here. *See supra* Part II.A.1. If anything, Section 3 of Article VII merely establishes the order in which the two countries were to exercise their otherwise existing jurisdiction. It does not add to or take away from either country's jurisdiction. *See Brazell v. Uddenberg*, No. 22-55954, 2023 WL 5665772, at *2 (9th Cir. Sept. 1, 2023) ("[T]he text of the agreement does not indicate that the United States' or [other signatory's] failure to follow [the waiver] procedure would nullify a signatory's authority to prosecute an offense.").[5]

Second, even assuming the United States violated the SOFA's waiver provision by prosecuting Dorrbecker, such a violation is not grounds for a federal court to set aside Dorrbecker's court-martial convictions. The SOFA provides that "[a]ll differences between the Contracting Parties relating to the interpretation or application of this Agreement shall be settled by negotiation between them without recourse to any outside jurisdiction." NATO SOFA art. XVI. It also provides that, with exceptions not relevant

---

[5] For similar reasons, we reject Dorrbecker's argument that the military was "without authority to convene the court-martial" because "the President, through the SOFA, placed a condition precedent upon the exercise of [the court-martial] convening authority." Opening Br. 28. Dorrbecker cites no authority supporting his theory that the SOFA limits a military officer's power to refer charges for court-martial. And nothing in the Agreement places a condition precedent on the existence of the United States' jurisdiction.

21

here, "differences which cannot be settled by direct negotiation shall be referred to the North Atlantic Council." *Id.*

As other courts have explained, provisions like these "establish[] an enforcement mechanism that is 'diplomatic, not judicial.'" *Patterson v. Wagner*, 785 F.3d 1277, 1285 (9th Cir. 2015) (quoting *In re Burt*, 737 F.2d 1477, 1488 (7th Cir. 1984)); *see also Holmes v. Laird*, 459 F.2d 1211, 1222 (D.C. Cir. 1972) (declining to enforce NATO SOFA provisions because "the corrective machinery specified in the treaty itself is nonjudicial" and instead provides for "diplomatic recourse only"); *Brazell*, 2023 WL 5665772, at *2 (similar). The Rules for Courts-Martial confirm that "the determination which nation, state, or agency will exercise jurisdiction" in cases "[w]here an act or omission is subject to trial by court-martial and by one or more civil tribunals, foreign or domestic," "is a matter for the nations, states, and agencies concerned, and is *not a right of the suspect or accused*." RCM 201(d)(3) (emphasis added); *see United States v. Murphy*, 50 M.J. 4, 7 (C.A.A.F. 1998). Dorrbecker thus has no right to enforce Section 3 of Article VII of the NATO SOFA in federal court on habeas review.[6]

---

[6] Dorrbecker also contends he has "standing" to enforce the SOFA because the United States' alleged violation created a risk that he will be subject to double jeopardy if Italy one day decides to prosecute him. A separate provision of the NATO SOFA creates protections against double jeopardy. *See* NATO SOFA art. VII, § 8. But that is not the provision that Dorrbecker claims warrants setting aside his court-martial convictions here, and we need not decide whether a servicemember might be able to enforce that provision in a future case. Moreover, Dorrbecker is not asserting the SOFA as a defense against Italian prosecution (the prospect of which is entirely speculative); rather, he is attempting to undo the results of his first (and only) prosecution for these offenses.

In sum, we conclude that Dorrbecker's reliance on the SOFA as a ground to attack his court-martial convictions is misplaced. Section 3 of Article VII did not deprive the United States military courts of subject-matter jurisdiction over Dorrbecker's offenses. And even assuming a violation occurred, Dorrbecker has no right to enforce the Agreement here.

III.

For these reasons, we affirm the district court's judgment dismissing Dorrbecker's petition for a writ of habeas corpus.

*AFFIRMED*

23